# EXHIBIT "B"

# *in globo*

# Part 1

1

# November 29, 2007 Meeting Agenda

1. Preservation of Electronic Information

    a. Parties' concerns

    b. Future actions, if any

2. Scope of Discovery

    a. Tiered/Staged Discovery System

    b. Effort parties are putting into production and preservation of relevant information

    c. Key words/search terms/protocol

    d. Most likely key personnel/custodians

    e. Date restrictions

    f. Discovery from agents/consultants

    g. Reasonable limitations on discovery (backup tapes, voicemail systems, etc.)

3. Privileged/Confidential Documents

    a. Clawback agreement/inadvertent disclosure

    b. Protective order or confidentiality agreement necessary?

    c. Redaction of documents

4. Form of Production

    a. Objections

    b. Hard copy documents

    c. Organization of production

    d. Redaction and its applicability to production of Native formats

    e. De-duplication

    f. Tiered/Staged approach

5. Ongoing Adjustment and Discovery

    a. How do the parties want to gather relevant documents created each month in the ongoing adjustment of the Port's claim?

6. Specific questions/concerns arising from November 14, 2007 Responses re: ESI

2

# ZELLE, HOFMANN, VOELBEL, MASON & GETTE
### REGISTERED LIMITED LIABILITY PARTNERSHIP

BOSTON
DALLAS
MINNEAPOLIS
SAN FRANCISCO
WASHINGTON, D.C.
BEIJING*
SHANGHAI*
*In association with ZY & Partners

1201 MAIN STREET
SUITE 3000
DALLAS, TEXAS 75202
214-742-3000 TELEPHONE
214-760-8994 FACSIMILE
www.zelle.com

Shannon M. O'Malley
somalley@zelle.com
(214) 749-4220

*EXCERPT*

December 11, 2007

### *VIA EMAIL GUIDRYS@PORTNO.COM*

Susan G. Guidry
William H. Hall & Associates
3500 N. Hulen Street
Metairie, Louisiana 70002

> Re:  *Board of Commissioners of the Port of New Orleans v. Lexington Insurance
> Company, et al.; USDC No. 06-8101, Section K, Mag. (5)*
> *Response to Questions re: FM Global's Electronically Stored Information*
> File Number:  2-001-0622

Dear Susan:

This letter summarizes the parties' November 29, 2007 Meet & Confer (the "Meeting") and the agreements reached therein, and responds to the Port's November 28, 2007 letter relating to e-discovery matters.

## SUMMARY OF THE NOVEMBER 29, 2007 MEETING

The attorneys and e-discovery consultants for FMIC and the Port met on November 29, 2007 to discuss various issues and concerns relating to discovery in this matter. Those present for FMIC were Joe Guichet, Shannon O'Malley, Monica Molstad Baresh, and Connie Nichols. Those present for the Port were Carolyn Southerland and Duke Alden from Huron Consulting, Susan Guidry, Bill Hall, Chip Merlin, and Deborah Trotter.

### 1.    Preservation

The parties expressed their respective concerns regarding the others' preservation processes at the Meeting and in correspondence before that meeting. The Port expressed concern as to the method by which FMIC has taken to preserve electronically stored information. Specifically, the Port was afraid that while gathering information from custodians, metadata could have been altered when the information and documents were copied. After discussing the matter further, the parties agreed that if the "modified date" was unaltered or unchanged, then the electronic information was gathered correctly. FMIC agreed to review the metadata information gathered from the custodians to ensure that the "modified date" was unaffected by the retrieval

Susan G. Guidry
December 11, 2007
Page 6

     Mabry, W. Barry, Ernst & Young
     Militescu, Michael, B&J (Accountant/Subcontractor for AI)
     Smith, Larry, Ernst & Young
     Torpey, Daniel, Ernst & Young

FMIC specifically requests the complete files of the above individuals related to the Port's negotiation and purchase of property insurance and the Port's claim for damage and business interruption loss arising out of Hurricane Katrina to Lexington, FMIC, and FEMA.

The parties agreed that the Port should and could use search terms, however, for documents that are not kept in a single file, or in the files of those identified above. For example, documents related to maintenance and repair of the Port's property may be found using search terms. FMIC therefore proposes that the Port use search terms listed in the document attached as Exhibit A. FMIC expects that the Port will produce relevant information and that FMIC's proposed search terms are an adjunct to the Port's efforts.

FMIC stated at the Meeting that it intends to seek discovery through subpoenas to Aon, Ernst & Young, and Adjuster's International. FMIC agreed to provide a copy of any documents received in response to its subpoena to the Port. The parties agreed to work with their consultants to gather information, but that the consultants do not have to go to the same lengths to preserve material as do FMIC and the Port.

The parties agreed that neither must preserve and produce digital voice mails and internet histories.

The parties also discussed whether date restrictions should be used to limit the scope of discovery. FMIC reiterated that it sought maintenance records from the Port for the two years prior to the loss. The parties addressed whether the Port's request to FMIC for underwriting files could be reduced, but the Port advised that it wants all underwriting material from 1985 to the present.

## 3.  Privileged/Confidential Documents

The parties agreed to the entry of a protective order/confidentiality agreement which will, among other issues, address the parties' duties regarding inadvertent disclosure of privileged information, a claw back agreement, and protection of any consultant's proprietary information including formulas in Excel spreadsheets. FMIC is currently drafting a proposed agreement and expects to provide its draft for review this week.

The Parties also agreed that following the entry of such a protective order/confidentiality agreement, they will exchange their respective litigation hold correspondence. Such an agreement does not waive any attorney client or work product privilege for any other information, however.

3

WILLIAM W. HALL & ASSOCIATES

ATTORNEYS AT LAW

3500 N. HULLEN STREET

METAIRIE, LOUISIANA 70002

────────

(504) 456-8692

TELECOPIER (504) 456-8624

March 28, 2008

VIA E-MAIL: SOMalley@zelle.com

Shannon O'Malley
ZELLE, HOFFMANN, VOELBEL, MASON & GETTE, L.L.P.
1201 Main Street, Suite 3000
Dallas, TX 75202

RE:   Board of Commissioners of the Port of New Orleans
      v. Lexington Insurance Company, *et al.*
      USDC No. 06-8101, Section K, Mag. (5)

Dear Shannon:

This responds to your letter of March 25, 2008.

Jerry Gette, you and I had a discussion on March 11, regarding the subpoenas that FM issued to Adjusters International and to Ernst & Young. We did not have a discussion last week, as stated in your letter. I was out of town between March 12 and March 24 and did not speak with either you or Jerry during that time period. At the time of our discussion, I had not yet received the 5:28 p.m. email of March 11 from your office issuing subpoenas to other Port consultants.

During our conversation, we discussed the fact that Adjusters International and Ernst & Young's files regarding work performed for the Port were the subject of a request for production, as well as a subpoena. We also discussed the fact that in prior conferences, FM's counsel and the Port's counsel had agreed that the parties would review their respective consultants' data before production of it. This agreement is reflected in the Parties' Proposed Discovery Order at V.A.3. My conversation with Jerry and you in this regard was simply to confirm that despite the fact that FM issued subpoenas to Adjusters International and Ernst & Young, we were still in agreement that the consultants' documents initially would be sent to the Port for review, and then would be delivered to FM. Jerry clearly confirmed that this agreement was still in place.

At no time during the conversation did we discuss, nor did I agree, that the Port would "take responsibility to ensure that all documents responsive to FMIC's subpoenas were produced," as stated in your letter. In fact, in numerous conferences in the past, you have been very vocal on the point that FM cannot completely control the responses of its consultants to requests for data. Without question, the Port will seek to have its consultants make full

Shannon O'Malley
March 26, 2008
Page 2

production of responsive, non-privileged material in response to any request for production served or subpoena issued in this matter.   However, Jerry did not request that I make the agreement stated in your letter, nor did I.

You will recall that a few hours after our conversation on March 11, we had a conference call that included a number of other counsel for both parties.  I am certain that we all confirmed our agreement regarding review and production of consultants' material at that time.  If there had been any earlier suggestion that the Port should make any guarantees regarding the consultants' productions, I am sure that would have been discussed during the later call.

When we received copies of the subpoenas to the other consultants on the evening of March 11, we assumed that the same agreement was in place.  We are working on the logistics of this production.

In the meantime, we ask that FM's counsel refrain from any communication with Port consultants, unless the consultant is represented by counsel, and that any communication be limited to referring the consultant to the Port's counsel.

With kind regards, I remain

Sincerely,

Susan G. Guidry
Of Counsel

SGG/tlf

4

| | |
|---|---|
| **From:** | <FANDFPC@aol.com> |
| **To:** | <guidrys@portno.com> |
| **Date:** | 3/18/2008 12:59:50 PM |
| **Subject:** | Port Litigation |

Good talking with you this morning.  I should be the focal point for
coordinating AI document discovery.  Let me know the format that Huron  Litigation
Consulting needs.  I am sure that we will be communicating in  the near future.
Good luck on the antique hunt.

Very truly yours,


William S. Finger


Frank & Finger,  P.C.
P.O. Box 1477
Evergreen, CO 80437-1477
Telephone:  303-674-6955
Facsimile: 303-674-6684
Email:  fandfpc@aol.com


*************It's Tax Time! Get tips, forms, and advice on AOL Money &
Finance.     (http://money.aol.com/tax?NCID=aolprf00030000000001)


**CC:**                <pbickford@ai-colorado.com>

**From:**        "Kelly Kowal" <KKowal@merlinlawgroup.com>
**To:**          William F. "Chip" Merlin, Jr <CMerlin@merlinlawgroup.com>, "Susan Guidry"
<GUIDRYS@portno.com>, "William W. Hall" <wmwhall@bellsouth.net>, "Deborah Trotter"
<DTrotter@merlinlawgroup.com>, "Marilyn Landiak" <LANDIAKM@portno.com>
**Date:**        3/19/2008 8:47:27 AM
**Subject:**     Port No-subpoena to Ernst & Young

I talked to Tiffany in the General Counsel's office at Ernst & Young.
It has been served with FM's subpoena.

She said that her office had sent objections to Shannon regarding the
scope of the subpoena, and will forward me a copy that I will forward to
you.  They have not filed an "official" objection with the court as of
yet.

She said that they have put their staff on notice to preserve, and that
they will being collecting responsive documents, subject to working out
their objections with Shannon.

She said they will forward us a copy of the documents they collect for
our review prior to producing to FM. She is going to stay in contact
with me, to advise us of the status of collection.

If you want to speak with her, her number is 202-327-5937.

Kelly Kowal

Paralegal to William F. Merlin, Jr.

Merlin Law Group, P.A.

777 South Harbour Island Blvd, Ste. 950

Tampa, FL 33602

813-229-1000

813-229-3692 fax

www.merlinlawgroup.com <http://www.merlinlawgroup.com/>

Case 2:06-cv-08101-DEW-ALC Document 152-2 Filed 07/30/08 Page 12 of 55

Susan Guidry - Board of Commissioners of the Port of New Orleans v. Lexington Insurance Company and Factory Mutual Insurance Page 1

| | |
|---|---|
| **From:** | "Dale, William E." <Dale@pbworld.com> |
| **To:** | <guidrys@portno.com> |
| **Date:** | 3/25/2008 3:29:42 PM |
| **Subject:** | Board of Commissioners of the Port of New Orleans v. Lexington Insurance Company and Factory Mutual Insurance Company |

Susan:

As a follow-up to our conversation regarding my representation of PB Americas, Inc. in connection with the above matter, my contact information is: William Dale, One Penn Plaza, 2nd Floor, New York, New York 10119. My telephone # is (212) 465-5349

NOTICE: This communication and any attachments ("this message") may contain confidential information for
the sole use of the intended recipient(s). Any unauthorized use, disclosure, viewing, copying, alteration, dissemination or distribution of, or reliance on this message is strictly prohibited. If you have received this message in error, or you are not an authorized recipient, please notify the sender immediately by replying to
this message, delete this message and all copies from your e-mail system and destroy any printed copies.

**From:** Brien Gussoni
**To:** Susan Guidry
**Date:** 3/26/2008 9:29:27 AM
**Subject:** Re: River Consulting, LLC

yes of course.

>>> Susan Guidry 3/26/2008 9:22 AM >>>
Brien,

I spoke briefly yesterday with Bernard Baisier of River Consulting, LLC, regarding the subpoena issued to River by FM. Mr. Baisier asked that you confirm by email that I represent the Port in the litigation and am authorized to speak with him on behalf of the Port.

Mr. Baisier's email address is bbaisier@riverconsulting.com.

Thank you.

Susan

Susan G. Guidry
Of Counsel
William W. Hall & Associates
Post Office Box 60046
1350 Port of New Orleans Place
New Orleans, Louisiana 70160
(504) 528-3232
guidrys@portno.com

The information contained in this e-mail, including any attachments thereto, is confidential and may be legally privileged. It is intended solely for the addressee(s) named herein. If you are not the intended recipient, any disclosure, copying, distribution or any action taken or omitted to be taken in reliance on it, is prohibited and may be unlawful. If you have received this e-mail in error, please notify us immediately by replying to this message and then permanently deleting the original. Your receipt of this message is not intended to waive any applicable privileges.

Case 2:06-cv-08101-DEW-ALC   Document 152-2   Filed 07/30/08   Page 14 of 55
Page 1
Susan Guidry - Re: Fwd: phone call

**From:**       Susan Guidry
**To:**         Brien Gussoni;  Marilyn Landiak
**Date:**       3/26/2008 9:53:22 AM
**Subject:**    Re: Fwd: phone call

Just to let you know, I spoke with Bill Dale yesterday.

Susan

Susan G. Guidry
Of Counsel
William W. Hall & Associates
Post Office Box 60046
1350 Port of New Orleans Place
New Orleans, Louisiana  70160
(504) 528-3232
guidrys@portno.com

The information contained in this e-mail, including any attachments thereto, is confidential and may be legally privileged. It is intended solely for the addressee(s) named herein. If you are not the intended recipient, any disclosure, copying, distribution or any action taken or omitted to be taken in reliance on it, is prohibited and may be unlawful. If you have received this e-mail in error, please notify us immediately by replying to this message and then permanently deleting the original. Your receipt of this message is not intended to waive any applicable privileges.

>>> Brien Gussoni 03/25/08 11:46 AM >>>
please see below.  seems best that one of you should return this call.  thanks.

>>> Juanita Breaux 3/25/2008 10:44 AM >>>
Attorney Bill Dale with Parsons Brinckerhoff (sic)
212/465-5349
Wanted to speak with one of our attorneys to let us know they have received a subpoena re: Board's suit against Lexington
Intend to respond with document request.

Juanita Breaux
Port of New Orleans
Legal Services/Risk Management
breauxj@portno.com
504/528-3228

5

ZELLE, HOFMANN, VOELBEL, MASON & GETTE
REGISTERED LIMITED LIABILITY PARTNERSHIP

BOSTON
DALLAS
MINNEAPOLIS
SAN FRANCISCO
WASHINGTON, D.C.
BEIJING*
SHANGHAI*
*In association with ZY & Partners

1201 MAIN STREET
SUITE 3000
DALLAS, TEXAS 75202
214-742-3000 TELEPHONE
214-760-8994 FACSIMILE
www.zelle.com

Shannon M. O'Malley
somalley@zelle.com
(214) 749-4220

March 28, 2008

*VIA EMAIL GUIDRYS@PORTNO.COM*

Susan G. Guidry
**WILLIAM H. HALL & ASSOCIATES**
3500 N. Hulen Street
Metairie, Louisiana 70002

Re:   *Board of Commissioners of the Port of New Orleans v. Lexington Insurance*
*Company, et al.; USDC No. 06-8101, Section K, Mag. (5)*
Production of Consultant Files
File Number: 2-001-0622

Dear Susan:

This letter responds to yours of March 28, 2008 regarding the Parties' agreements concerning production of consultant material.

It appears that the Parties do not, in fact, have an agreement or understanding concerning the production of consultant material subject to a subpoena. We agree that the Parties have discussed production of consultant documents in the past, and that the Parties agreed to produce consultant documents in their possession, custody, and control. In fact, the language of the Proposed Discovery Plan states such an agreement:

> When Parties request production of agents' or consultants' files,
> Parties will produce all non-privileged and responsive documents
> *that the Party receives from the agent or consultant.*

It seems that our prior discussions were focused on documents that the Parties sought through Requests for Production. The discussions concerned potential review of documents within the Parties' possession, which might also be subject to subpoenas (*i.e.* duplicate documents).

Unfortunately, it is not clear what the agreement is, if any, concerning documents within the consultants' possession over which the Parties have no possession, custody, or control. The subpoenas that FMIC issued to the Port's consultants request, in part, specific additional documents beyond those requested from the Port in the Requests for Production.

Susan G. Guidry
March 28, 2008
Page 2

FMIC disputes that the Parties had a prior agreement that consultant documents responsive to subpoenas initially would be sent to the Port for review and then delivered to FMIC. In fact, at the November 29, 2007 meeting, we specifically indicated our intent to continue to issue subpoenas to the Port's consultants, and agreed to share documents collected from such subpoenas with the Port. For example, FMIC subpoenaed Aon on December 14, 2007, has had discussions with Aon's counsel, and has periodically discussed these subpoenas with the Port in the past. The Port has never indicated that it intends to review Aon's production prior to FMIC's receipt.

But FMIC does not object to a process whereby the Port's consultant provides documents responsive to a subpoena to the Port for an initial review, prior to production to FMIC. FMIC would expect the same courtesy from the Port. If the Port intends to withhold responsive documents, FMIC would expect the Port to provide a log of such documents. Thus, while FMIC still expects the Port's consultants to respond to the subpoenas, and provide responsive documents, FMIC does not object to the Port's interim review of such documents prior to production.

The point is: FMIC does not wish to have consultant documents, which are subject to a subpoena, to be potentially lost, overlooked, or forgotten in the process of the Port's review and /or production of its own documents.

You have asked that FMIC refrain from any communication with the Port's consultants. This matter should be further discussed. FMIC does not consider that issuance of subpoenas is an *Ex Parte* communication. Nor will FMIC refrain from discussion with the consultants' counsel regarding the form of production requested and deadlines to respond to such requests. For example, FMIC is in contact with Aon's counsel and will continue such discussions.

If you would like to have a conference call with counsel to discuss this issue, we would be happy to oblige. We believe a discussion between the Parties could avoid further misunderstandings and will finalize this issue in an efficient manner.

Please let me know your thoughts.

Sincerely,

ZELLE, HOFMANN, VOELBEL, MASON & GETTE LLP

Shannon M. O'Malley

Susan G. Guidry
March 28, 2008
Page 3


cc:    Joseph P. Guichet
       Ralph S. Hubbard
       LUGENBUHL, WHEATON, PECK, RANKIN & HUBBARD
       Suite 2775, Pan-American Life Center
       601 Poydras Street
       New Orleans, Louisiana 70130-6041

       H. Jerome Gette (Firm)
       Thomas H. Cook, Jr. (Firm)
       R. Tate Gorman (Firm)
       James Holbrook (Firm)

       William W. Hall, Esq.
       William W. Hall & Associates
       3500 North Hullen Street
       Metairie, LA 7002
       *VIA EMAIL: WMWHALL@BELLSOUTH.NET*

       Deborah R. Trotter
       Merlin Law Group, P.A.,
       718 Dunbar Avenue, Suite 1A,
       Bay St. Louis, MS, 39520
       *VIA EMAIL:  DTROTTER@MERLINLAWGROUP.COM*

       William F. Merlin, Jr
       Merlin Law Group, P.A.
       777 S. Harbour Island Blvd., Suite 950,
       Tampa, Florida, 33602
       *VIA EMAIL: CMERLIN@MERLINLAWGROUP.COM*

       Gerald O. Gussini, Jr.
       Executive Counsel for the Port of New Orleans
       *VIA EMAIL: GUSSONIB@PORTNO.COM*

2081623v1

6

| | |
|---|---|
| **From:** | Joseph Guichet [jguichet@lawla.com] |
| **Sent:** | Tuesday, April 01, 2008 4:51 PM |
| **To:** | Kelly Collins; jgette@zelle.com |
| **Cc:** | LANDIAKM@portno.com; wmwhall@bellsouth.net; William F. "Chip" Merlin, Jr; Deborah Trotter; Mary Kestenbaum; Kelly Kowal; guidrys@portno.com |
| **Subject:** | RE: |

Deborah –

I am confused by your statement that "we were unable to resolve the issues regarding the third party consultant's production." You and I spoke about these issues yesterday and I agreed that the parties should be able to work out issues re: third party consultants' files, but that I am not the person on our team to address the issue. I spoke to Jerry a short time ago about this issue and am attempting to advance the ball. I understand that he is planning to call you tomorrow to try to work this issue out. What has happened since we spoke yesterday such that "we were unable to resolve the issues?"

Joe

**From:** Kelly Collins [mailto:KCollins@merlinlawgroup.com]
**Sent:** Tuesday, April 01, 2008 4:23 PM
**To:** jgette@zelle.com; Joseph Guichet
**Cc:** LANDIAKM@portno.com; wmwhall@bellsouth.net; William F. "Chip" Merlin, Jr; Deborah Trotter; Mary Kestenbaum; Kelly Kowal; guidrys@portno.com
**Subject:**

Joe,

Regrettably, we were unable to resolve the issues regarding the third party consultant's production. Please find attached a Good Faith Certificate which we would appreciate your signing and returning to us immediately so that we may file our motions. Please also copy Susan Guidry with any responses and the executed copy.

If you have any questions please do not hesitate to call.

Kind Regards,

*Deborah Trotter*
Merlin Law Group
718 Dunbar Ave., Suite 1A
Bay St. Louis, MS. 39520
Telephone: 228-469-9040
Facsimile: 228-469-9039

This message is intended solely for the use of the addressee and may contain information that is PRIVILEGED and CONFIDENTIAL. If you are not the intended recipient, you are hereby notified that any dissemination of this message is strictly prohibited. If you have received this communication in error, please erase all copies of the message and its attachments and notify the sender immediately. Thank you.

7

**From:** Jerry Gette [JGette@zelle.com]
**Sent:** Wednesday, April 02, 2008 11:27 AM
**To:** Deborah Trotter; Joseph Guichet
**Cc:** LANDIAKM@portno.com; wmwhall@bellsouth.net; William F. "Chip" Merlin, Jr; Mary Kestenbaum; Kelly Kowal; guidrys@portno.com; Kelly Collins
**Subject:** RE: 3rd Party Consultant Production

Deborah,

Susan and I had a good call this morning. I am hopeful that the parties can quickly reach agreement on the consultant production issues. Susan is preparing a draft for review. We can work with you on the April 7 date, so that need not be the driver. Susan and I had many areas of agreement, while a few issues (e.g. scope and cost) need to be discussed further.

Regards,

Jerry

**From:** Deborah Trotter [mailto:DTrotter@merlinlawgroup.com]
**Sent:** Tuesday, April 01, 2008 5:22 PM
**To:** Joseph Guichet; Jerry Gette
**Cc:** LANDIAKM@portno.com; wmwhall@bellsouth.net; William F. "Chip" Merlin, Jr; Mary Kestenbaum; Kelly Kowal; guidrys@portno.com; Kelly Collins; Deborah Trotter
**Subject:** RE: 3rd Party Consultant Production

Joe,

In our conversations yesterday, I am sure that I made it clear that the 3rd party consultant production issues had become a problem that needed to be resolved immediately. We have already had several communications regarding these issues and yet, you are "voluntarily producing" your consultant's documents in the manner agreed and our consultant's are required to produce in a different manner as outlined by your subpoenas.

As you know, some of our consultants have been served subpoenas which require a response by April 7, 2008. Though we were unable to manage a telephone conference with Jerry yesterday, we did discuss that you had spoken to Jerry and further discussed reducing to writing an agreement to avoid the continued need for correspondence and meetings regarding the same and for a document for reference.

I will be unavailable tomorrow. However, the Port's legal team has discussed these issues and Susan and others on our legal team may be available for a telephone conference tomorrow to finalize a parallel agreement that preserves and protects the rights of all parties. I trust that an agreement can be reached to satisfy the needs of both parties. However, please keep in mind the tight deadline in which to solidify an amicable agreement.

I encourage you to contact Jerry and the Port's legal team through Susan to schedule a telephone conference for tomorrow. Beyond that date we will be forced to seek relief from the court.

Kind regards,
Deborah

*Deborah R. Trotter, Esquire*
**Merlin Law Group, P.A.**
718 Dunbar Avenue, Suite 1 ^

8

Susan Guidry - Agreement re Consultant Subpoenas 4.3.08.txt

From:     Susan Guidry [GUIDRYS@portno.com]
Sent:     Thursday, April 03, 2008 6:47 PM
To:       Joseph Guichet; JGette@zelle.com
Cc:       William W. Hall; ChipMerlin; Deborah Trotter
Subject:     Agreement re Consultant Subpoenas
Attachments:   PoNO Form of Production Letter - Consultants_1.pdf; Non-Waiver
Agreement Consultant Docs_1.doc

Dear Jerry and Joe,

Attached is a revised proposed agreement based on Joe's email and further
consideration of our conversations yesterday.

As Joe requested, a copy of the Port's requested form of production is also
attached.  Huron informs me that FM is presently producing to the Port in the
format attached, which was agreed upon some time ago for FM's production of
its documents to the Port.  I believe that this puts this issue to rest.

In our conversations yesterday, and particularly yesterday morning, Jerry
seemed very concerned about costs, so we discussed the idea that FM might want
to limit the scope of the subpoenas it issued to consultants that have
performed work for the Port for years, and we particularly discussed
duplicative contracts and work order documents that FM has requested from the
Port and also subpoenaed from the consultants.  We discussed meeting to
discuss limiting the scope of these subpoenas with a view toward getting the
cost of production down.  We later discussed that the Port would also have
correspondence and emails from these consultants that would be part of the
Port's productions, such that if FM wanted, it could limit the subpoenas
further by not seeking those from the consultants.  Of course, with regard to
the correspondence and emails, I stated that what the Port has and what a
consultant has may differ.  The Port would not have all of the consultants'
writings that may deal with a project.

I want to clarify that the Port intends to seek all correspondence, emails and
other documents from FM's consultants regarding the Port and the Port's
insurance claims.  FM's consultants differ from the Port
consultant/contractors that have worked on Port projects, in that many of the
Port's consultants' documents will strictly have to do with construction
projects, not the Port's insurance claim with FM.

I anticipate that FM will want complete production of Al's documents, just as
the Port will want complete production of FM's consultants, because these
consultants have dealt strictly with the insurance claim.

I hope we were on the same page in that regard.  I revised the agreement to
make it clear that concern over costs will not trump complete production of
responsive, non-privileged documents.
The consultant is responsible to produce all responsive documents, the
reviewing party will produce all non-privileged documents the consultant
submits, and the consultant will have a copy of everything it has submitted in
case a dispute ever arises regarding what was submitted.

This brings us to the costs.  I again must disagree that the usual custom is
for a party to pay its consultants' costs.  In my experience, that occurs
through agreement of counsel only when both parties' requested productions are
substantially equal in cost.  The problem that I see with Joe's suggestion is

that it leaves the question of costs in limbo for an undetermined period, with the party that is not requesting the document paying for them. I also do not agree that it gives FM a greater incentive to limit the scope of the subpoenas. It puts off FM's responsibility to pay for the productions it seeks until the undetermined time.

The agreement as proposed creates incentive for the requesting party to determine before it issues a subpoena the cost it is willing to incur. As to subpoenas already issued, the proposed agreement creates incentive for FM to determine in short order whether and to what extent it wants to limit the scope.

I tried to think of a better route, but could not. Any other ideas?

We appreciate your extension of the April 7 deadlines. Nevertheless, we would like to have this resolved tomorrow.

Regards,

Susan


Susan G. Guidry
Of Counsel
William W. Hall & Associates
Post Office Box 60046
1350 Port of New Orleans Place
New Orleans, Louisiana  70160
(504) 528-3232
guidrys@portno.com

The information contained in this e-mail, including any attachments thereto, is confidential and may be legally privileged. It is intended solely for the addressee(s) named herein. If you are not the intended recipient, any disclosure, copying, distribution or any action taken or omitted to be taken in reliance on it, is prohibited and may be unlawful. If you have received this e-mail in error, please notify us immediately by replying to this message and then permanently deleting the original. Your receipt of this message is not intended to waive any applicable privileges.

9

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **BOARD OF COMMISSIONERS OF** | * **CIVIL ACTION NO. 06-8101** |
| **THE PORT OF NEW ORLEANS** | * |
| | * |
| **Plaintiff,** | * |
| | * |
| **v.** | * |
| | * **JUDGE DONALD E. WALTER** |
| **LEXINGTON INSURANCE COMPANY,** | * |
| **And FACTORY MUTUAL INSURANCE** | * |
| **COMPANY,** | * |
| | * |
| **Defendants.** | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* **MAGISTRATE ALMA L. CHASEZ**

**NON-WAIVER AGREEMENT RELATING TO**
**PRODUCTION OF CONSULTANT DOCUMENTS**

WHEREAS, plaintiff, the Board of Commissioners of the Port of New Orleans ( "Port"), and defendant, Factory Mutual Insurance Company ("FMIC"), (hereinafter referred to as the "Parties"), have or will seek production of documents, both electronic and hard copy, and things (hereinafter collectively referred to as "documents") from the opposing Party's consultants, agents and contractors (hereinafter referred to as "Consultant" or "Consultants") through subpoenas issued to the Consultants; and

WHEREAS, the Parties have agreed to a production procedure with regard to their Consultants' documents and have agreed to further discussions ~~in an attempt to avoid undue burden and expense on their Consultants and duplicative document production~~regarding costs and scope of production; and

WHEREAS, the Parties desire to establish a mechanism to avoid waiver of any claim for protection of their Consultants or their Consultants' documents in the future should a Party disagree with the requesting Party regarding the relevance, privilege, burden, expense or other possible objection to production of a Consultant's documents;

1

IT IS HEREBY STIPULATED AND AGREED by the Parties that the following clauses shall govern the production of Consultants' documents throughout the course of this litigation, unless a modification of this Agreement is agreed upon by the parties or required by order of Court:

1. Each Party's Consultants, when issued a subpoena, will produce its documents to the Party with whom the Consultant is associated.   The Consultant is responsible to produce all documents responsive to the subpoena.

2. The Parties recognize a Consultant's right to object to production of any or all documents sought by subpoena.  Each Party agrees to confer with the other Party regarding any such objections and to work with its Consultants to resolve all reasonable concerns of the Consultant in order to avoid the need for the requesting Party to file a motion to compel production.

3. The Party receiving its Consultant's documents will review the documents for privilege only.  The reviewing Party will produce a privilege log that identifies any document that is redacted or withheld from production.   The privilege log will comply with FRCP Rule 45(d)(2)(A), as well as with any order of the court or agreement of the Parties.

4. The reviewing Party will produce to the requesting Party all documents that are not withheld for privilege and a privilege log within thirty (30) days of service of the subpoena unless another time is agreed upon by the Parties. The reviewing Party will produce the documents in the same order as the documents were delivered to the reviewing Party by the Consultant.

5. With regard to form of production, the Parties agree to request that their Consultants produce documents in native format and to facilitate production by the Consultants in native format. The Parties further agree that the production from the reviewing Party to the requesting Party will be made in the format requested in the subpoenas, as long as the requested format is reasonable.  The Port anticipates that its requested format will be as set forth in Exhibit "A" hereto.  The Port agrees that the format requested by FMIC in its subpoenas issued to date is reasonable.

6. The reviewing Party will provide to its Consultant a master copy of all documents produced by the Consultant to the reviewing Party, as well as a copy of the privilege log.  The purpose of this master copy is to memorialize the complete production made by the Consultant to the reviewing Party.

7. The Parties recognize that there will be two elements to the cost of these productions. The first is the cost initially borne by the Consultant to copy or scan documents for delivery to the reviewing Party.   The second cost is that initially borne by the reviewing Party to process the documents in the form agreed upon herein or otherwise agreed upon by the Parties.

2

8. The Parties further recognize that documents sought by FMIC from certain Port Consultants are of a sufficiently greater number, in comparison to the documents sought by the Port from FMIC's Consultants, such that it will not be reasonable for each Party to bear the cost of its Consultants' productions unless the scope of the ~~requested documents~~subpoenas is sufficiently limited through agreement of the Parties.  In absence of another agreement, the requesting Party will bear the reasonable cost of production to that Party, and the reviewing Party will bear the cost of a copy of the production.

9. The Parties agree to confer regarding the costs of production and regarding the scope of the documents sought through the subpoenas to Consultants. ~~Particularly, the Parties will confer to determine whether documents sought through the subpoenas are essentially duplicative of documents that have been or could be produced by the Party associated with that Consultant.~~ The Parties agree to work toward easing the burden of production as to the Consultants. <u>Notwithstanding this objective, the Parties agree that each Party has a right to complete production of relevant, non-privileged documents from the Consultants to which subpoenas are issued within the time stated in the subpoena, or as otherwise agreed.</u>

10. The Parties agree that the fact that a Party produced any documents of a Consultant before the date of this Agreement does not affect the Party's obligations undertaken in this Agreement.

11. Nothing herein shall prevent a Party from applying to the Court for a modification of this Agreement should the moving Party believe that the Agreement, as originally agreed upon, is hampering its efforts to seek information through discovery or prepare for trial; or from applying to the Court for further or additional protective agreements; or from an agreement between the Parties to any modification of this Agreement.

12. The Parties agree that they will not object to a motion to quash and/or a motion for protective order on the basis that it is untimely if the moving Party files the motion within ten (10) days after the Parties have failed to come to an agreement on an issue. Either Party may trigger the time for filing of such a motion by confirming in writing to the other Party that the Parties have failed to agree on an issue.

13. This Agreement does not alter any obligations of the Parties under the Federal Rules of Civil Procedure with regard to experts and their documents.

14. This Agreement shall be binding on the Parties hereto when signed.

15. The effective date of this Agreement shall be April 2, 2008.

AGREED:

3

DATED: _____          DATED: _____

By: _____
William W. Hall (#6449)
**WILLIAM W. HALL & ASSOCIATES**
3500 N. Hullen Street
Metairie, Louisiana 70002
Telephone: (504) 456-8692
Facsimile: (504) 456-8624
wmwhall@bellsouth.net

Susan G. Guidry (#17679)
Of Counsel
**WILLIAM W. HALL & ASSOCIATES**
Post Office Box 60046
1350 Port of New Orleans Place
New Orleans, Louisiana 70160
Telephone: (504) 528-3232
guidrys@portno.com
sgguidry@cox.net

William F. Merlin, Jr. (*Pro Hac Vice*)
**MERLIN LAW GROUP, P.A.**
777 S. Harbour Island Blvd.
Suite 950
Tampa, FL 33602
Office: 813-229-1000
Fax: 813-229-3692
wmerlin@merlinlawgroup.com

Deborah R. Trotter (# 29459)
**MERLIN LAW GROUP, P.A.**
718 Dunbar Ave.
Suite 1A
Bay St. Louis, Mississippi 39520
Office: 228-469-9040
Fax: 228-469-9039
dtrotter@merlinlawgroup.com

Gerald O. Gussoni, (#1392)
Jeffrey M. Lynch (#18313)
Francine Weaker (#18520)
Joseph W. Fritz, Jr. (#5755)
THE BOARD OF COMMISSIONERS OF
THE PORT OF NEW ORLEANS
Post Office Box 60046
1350 Port of New Orleans Place
New Orleans, Louisiana 70160
Telephone: (504) 528-3228
gussonib@portno.com
Attorneys for plaintiff, Board of
Commissioners of the Port of New Orleans

By: _____
Joseph P. Guichet, #24441
Ralph S. Hubbard, III, #7040
Rachel W. Meese, #25457
**LUGENBUHL, WHEATON, PECK, RANKIN
& HUBBARD**
601 Poydras Street, Suite 2775
New Orleans, LA 70130
Telephone:   (504) 568-1990
Facsimile:   (504) 310-9195

H. Jerome Gette (Of Counsel),Texas Bar No.
07831400
R. Tate Gorman, Texas Bar No. 24032360
Shannon M. O'Malley, Texas Bar No. 24037200
James W. Holbrook, III, Texas Bar No. 24032426
**ZELLE, HOFMANN, VOELBEL, MASON
& GETTE, L.L.P.**
1201 Main Street, Suite 3000
Dallas, TX 75202
Telephone:   (214) 742-3000
Facsimile:   (214) 760-8994
(Admitted *Pro Hac Vice*)

**ATTORNEYS FOR DEFENDANT FACTORY
MUTUAL INSURANCE COMPANY**

# Port of New Orleans Form of Production Request:
(Drafted pursuant to FRCP Rule 26(f)4)

## 1. Document Types

For the purposes of this request, the documents will be grouped into the following categories:

1) **Email:** Messages created using Microsoft Exchange, Outlook, Outlook Express, Lotus Notes, GroupWise, or other electronic mail system. Examples of file extensions related to email include: PST, MSG, EML, EDB, and NSF.
2) **Email Attachments:** Native files sent as part of an email message unit. There are numerous file extensions possible for email attachments, but common extension include DOC, XLS, PDF, PPT, JPG, BMP, WPD.
3) **E-Docs:** Native files found on storage devices such as computer hard drives, portable hard drives, portable flash memory devices ("thumb drives"), CDs, DVDs, shared servers, and document management systems.
4) **Scanned Hard Copy Docs:** Hard copy (paper) documents scanned into a tagged image file format (TIFF).

## 2. Metadata Load File

A delimited load file containing the extracted metadata from the native files should be included with each production. The file must use standard Concordance delimiters and be in Concordance data file format (DAT). The same load file format should be used for all types of docs, regardless of whether or not all fields are populated (for example, e-docs will not contain "to/from" metadata as would an email message, so that field may be left blank but should nevertheless be included):

### Full List of Requested Fields:

| Field # | Field Name | Description |
|---|---|---|
| 1 | Custodian | Name of the owner or custodian of the document. |
| 2 | Volume | Volume number as found on production media (see Section 7) |
| 3 | BegDoc# | First production Bates number assigned to the document. This will be the field to which the TIFF images will be linked. |
| 4 | EndDoc# | Last production Bates number assigned to the document. |
| 5 | BegAttach | First production Bates number assigned to the email message unit. |
| 6 | EndAttach | Last production Bates number assigned to the email message unit. |
| 7 | Filename | Original filename of native file. |
| 8 | SourceFile | Fully qualified original path including filename. This will be the field to which the native file will be linked. |
| 9 | DateCreated | Creation date of the native file. |
| 10 | TimeCreated | Creation time of the native file. |
| 11 | DateLastMod | Date the native file was last modified. |
| 12 | TimeLastMod | Time native file was last modified. |
| 13 | Subject | Subject field value extracted from metadata of native file. |
| 14 | Title | Title field value extracted from the metadata of the native file. |
| 15 | Comments | Comments field value pulled from the metadata of the native file. |
| 16 | Filesize | Size of native file, in bytes. |
| 17 | To | Main recipient(s) of the e-mail message. |
| 18 | From | Sender of the e-mail message. |
| 19 | CC | Recipient(s) of "Carbon Copies) of the e-mail message. |
| 20 | BCC | Recipient(s) of "Blind Carbon Copies" of the e-mail message. |
| 21 | EMail_Subject | Subject of the e-mail message. |
| 22 | DateSent | Sent date of an e-mail message. |
| 23 | TimeSent | Time the e-mail message was sent. |
| 24 | DateRcvd | Received date of an e-mail message. |
| 25 | TimeRcvd | Time the e-mail message was received. |
| 26 | Attachmt | Populates parent records with BegDoc# of each attached record, separated |

| | | by semi-colons. |
|---|---|---|
| 27 | Attach | Populates parent records with original filenames of all attached records, separated by semi-colons. |
| 28 | AttRange | Stores BegDoc# of parent record and EndDoc# of last attachment record, separated by a hyphen. Populated for all records in the family (parent and attachment(s)). |
| 29 | DocExt | File extension of native file. May show original extension or suggested extension, depending on state of "auto-assign ext." option in EDLoader. |
| 30 | EntryID | Unique identifier of e-mails in mail stores. |
| 31 | FileDescription | Description of native file type, as listed in file type database. |
| 32 | IntMsgID | Internet Message ID assigned to an e-mail message by the outgoing mail server. |
| 33 | MD5Hash | Unique identifier, similar to a "fingerprint". Uses 128-bit encryption. May be used for de-duping purposes. |
| 34 | PgCount | Number of pages in a document (image records). |
| 35 | SourceApp | Source application assigned to the native file, as specified in the file type database. This application will be used to print the file during the e-Print and TIFF Conversion batch processes. |
| 36 | BoxNum | Box number for any document (including paper) collected from a storage box, whether on-site or offsite. This number could be the number assigned by an offsite storage company (e.g. Iron Mountain) or a number assigned internally by the record keeper. |
| 37 | Folder_Tab_Label | Text contained on the tab or label of the file folder from which a hard copy document was collected. If multiple file labels are present, separated two dashes (--). |
| 38 | Text | Extracted text from email and e-doc files. OCRed text for hard copy documents. |

**Concordance Standard Delimiters:**
Comma        =        (020)
Quote        =        (254)
New Line     =        (174)
(Hard return only for each new record)

**3. Image Load File**
An Opticon load file must accompany all production materials to enable us to load the documents into a review tool.

**The fields in the Opticon file will be:**
Image Key without the file extension, Volume, Path, Document Breaks, and Page Count.
(A comma will separate all fields.) Please note that the "PREFIX" should be determined by the producing party.

**Sample .opt file format:**
PREFIX-00000001,PREFIX001,\001\PREFIX-00000001.tif,Y,,,2
PREFIX-00000002,PREFIX001,\001\PREFIX-00000002.tif,,,,
PREFIX-00000003,PREFIX001,\001\PREFIX-00000003.tif,Y,,,2
PREFIX-00000004,PREFIX001,\001\PREFIX-00000004.tif,,,,
PREFIX-00000005,PREFIX001,\001\PREFIX-00000005.tif,Y,,,1

## 4. Production Format by Document Type

**a. Email and Email Attachments:** All email messages should be produced as both TIFF images and in native file format (for example, MS Outlook emails should be produced as both TIFF and MSG files). The TIFF images should be create in manner mirroring how those messages would appear if they were printed from the native email application (MS Outlook, Lotus Notes, Groupwise, etc):

**b. E-Docs:** All e-docs should be produced as both TIFF images and in native file format (for example, Excel files as both TIFF and XLS files):

**c. Scanned Hard Copy Documents:** All responsive hard copy documents should be produced as TIFF images with appropriate bibliographic coding applied to identify fields 36 and 37 in the metadata list outlined in Section 2.

## 5. TIFF Format

All TIFF images delivered pursuant to Section 4 should be delivered in the following format:

- 300 dpi resolution
- TIFF file format
- Group IV compression
- Single page format (not multi-page)
- Logical unitization (document-level breaks)

## 6. Production Document Numbering

All documents produced should be given a sequential production number (Bates Number). Documents produced as TIFF images should be assigned a production number per page. Documents produced in native format should be assigned a single production number per file.

a. Email, E-Docs, and Scanned Hard Copy Documents should be endorsed with the production numbers in the lower right-hand corner of each page in a manner at to not cover any of the original body of the document. The pages may also be endorsed in the lower left-hand corner with any special production marks such as "Confidential" that you may desire. The single-page TIFF files should be named with the production Bates number assigned to each document. For example, if the production number of a produced page is "PREFIX-00000001", the file name of the associated TIFF would be "PREFIX-00000001.tif"

b. For files being produced natively, the files should be renamed with their respective bates numbers. The original filename will show up in the DAT file or any load file that is created for production.

## 7. Production Delivery Format

All production materials should be sent on read-only optical disks (such as CD-ROMs or DVDs) or on portable hard drives:

- One Volume ID per piece of media. Volume IDs are increased incrementally for each additional piece of media. Documents must not have pages on two different pieces of media.
- All load files described in this document should be saved in a folder named "DATA".
- Images should be saved on the media in a folder named "IMAGES". Image sub-folders should be used and named starting at "001", increasing incrementally while maintaining the three number padding. There should be no more than 1,000 images per sub-folder. Documents should not have pages spanning more than one sub-folder.
- Native files should be saved in a folder named "NATIVE".

## 8. Follow-up for Additional Questions

If any questions arise from this document as you begin your data processing or production activities, we are available to discuss in a collaborative environment to clarify our request. Please submit all requests to discuss this document to: Susan Guidry at (504) 528-3232 or via email at GUIDRYS@portno.com.

---

[1] An "email message unit" is defined as all documents purposefully attached or linked electronically to each other. With native documents this generally only applies to email files where the email is the parent of the family and other documents are "attached" and denoted as the attachment range. Container files such as PST, NSF, ZIP, RAR files that contain multiple documents should NOT be treated as email family units.

10

SAMPLE

**From:**      Susan Guidry
**To:**        bobblackstone@DWT.com
**Date:**      4/3/2008 2:30:10 PM
**Subject:**   Return on FM subpoena

We are working towards an agreement with FM Global regarding the procedure for the production of documents requested by them from you.

FM has agreed that the Port's consultants and contractors will produce their documents to the Port for review, and that the Port will then produce the documents to FM.

FM has also agreed to an extension of the April 7, 2008 return date while we work on an agreement.

We will continue to keep you informed of progress in this matter. In the meantime, if you have any questions, please do not hesitate to call.

Susan G. Guidry
Of Counsel
William W. Hall & Associates
Post Office Box 60046
1350 Port of New Orleans Place
New Orleans, Louisiana  70160
(504) 528-3232
guidrys@portno.com

The information contained in this e-mail, including any attachments thereto, is confidential and may be legally privileged. It is intended solely for the addressee(s) named herein. If you are not the intended recipient, any disclosure, copying, distribution or any action taken or omitted to be taken in reliance on it, is prohibited and may be unlawful. If you have received this e-mail in error, please notify us immediately by replying to this message and then permanently deleting the original. Your receipt of this message is not intended to waive any applicable privileges.

11

**From:** "Jerry Gette" <JGette@zelle.com>
**To:** "Susan Guidry" <GUIDRYS@portno.com>, "Joseph Guichet" <jguichet@lawla.com>
**Date:** 4/4/2008 3:59:35 PM
**Subject:** Port ... Agreement re Consultant Subpoenas

Dear Susan,

Thanks for your email. The major issues still remain cost and timing.
Our proposal below addresses both of these issues.

Yesterday, in our discussions, you mentioned that the Port likely has
many (but, certainly not all) of the documents FMIC is requesting via
its subpoenas to the Port's consultants and that the Port will be
producing these documents by the end of the month in response to FMIC's
Requests to the Port. This being the case, we agree it makes little
sense at this time to require the consultants to produce what, in
essence, may largely be duplicative materials. Accordingly, FMIC is
going to review the Port's production before requiring the Port's
consultants to respond to FMIC's subpoenas. Following FMIC's review, the
scope of the subpoenas will likely be reduced significantly and the
burden on the consultants proportionately diminished.

We intend to communicate this position to the consultants who have
already acknowledged receipt of the FMIC subpoenas and will communicate
this position to the remaining consultants as soon as we are contacted
regarding our subpoenas. We welcome the Port's assistance in this
regard.

Finally, we will continue to review the proposed Non-waiver Agreement
Relating to Production of Consultant Documents and provide you with our
comments. Given the position set forth above, none of the Port's
consultants will have an obligation to produce documents to FMIC until
we contact them with the reduced scope of documents to be produced.

Regards,

Jerry

-----Original Message-----
From: Susan Guidry [mailto:GUIDRYS@portno.com]
Sent: Thursday, April 03, 2008 6:47 PM
To: Joseph Guichet; Jerry Gette
Cc: William W. Hall; CMerlin@merlinlawgroup.com; Deborah Trotter
Subject: Agreement re Consultant Subpoenas

Dear Jerry and Joe,

Attached is a revised proposed agreement based on Joe's email and
further consideration of our conversations yesterday.

As Joe requested, a copy of the Port's requested form of production is
also attached. Huron informs me that FM is presently producing to the
Port in the format attached, which was agreed upon some time ago for
FM's production of its documents to the Port. I believe that this puts
this issue to rest.

12

SAMPLE

**From:**      Susan Guidry
**To:**        tiffany.yeseiski@ey.com
**Date:**      4/7/2008 2:00:00 PM
**Subject:**   Return on FM subpoena — Ernst & Young

Dear Tiffany:

As you can see by the email below that I received last Friday, April 4, 2008, from Jerry Gette, counsel for Factory Mutual Insurance Company, FM has extended indefinitely the deadline for return on the subpoena issued to your company.  Sometime in May, after the Port has produced documents requested by FM, we will revisit with FM the issue of the production to be made in response to the subpoenas.

We will continue to keep you informed of the progress of this matter.  Meanwhile, if you have any questions, please do not hesitate to call.

Susan G. Guidry
Of Counsel
William W. Hall & Associates
Post Office Box 60046
1350 Port of New Orleans Place
New Orleans, Louisiana  70160
(504) 528-3232
guidrys@portno.com

The information contained in this e-mail, including any attachments thereto, is confidential and may be legally privileged. It is intended solely for the addressee(s) named herein. If you are not the intended recipient, any disclosure, copying, distribution or any action taken or omitted to be taken in reliance on it, is prohibited and may be unlawful. If you have received this e-mail in error, please notify us immediately by replying to this message and then permanently deleting the original. Your receipt of this message is not intended to waive any applicable privileges.

>>> "Jerry Gette" <JGette@zelle.com> 04/04/08 3:58 PM >>>
Dear Susan,

Thanks for your email. The major issues still remain cost and timing.
Our proposal below addresses both of these issues.

Yesterday, in our discussions, you mentioned that the Port likely has many (but, certainly not all) of the documents FMIC is requesting via its subpoenas to the Port's consultants and that the Port will be producing these documents by the end of the month in response to FMIC's Requests to the Port. This being the case, we agree it makes little sense at this time to require the consultants to produce what, in essence, may largely be duplicative materials. Accordingly, FMIC is going to review the Port's production before requiring the Port's consultants to respond to FMIC's subpoenas. Following FMIC's review, the scope of the subpoenas will likely be reduced significantly and the burden on the consultants proportionately diminished.

We intend to communicate this position to the consultants who have already acknowledged receipt of the FMIC subpoenas and will communicate this position to the remaining consultants as soon as we are contacted

regarding our subpoenas. We welcome the Port's assistance in this regard.

Finally, we will continue to review the proposed Non-waiver Agreement Relating to Production of Consultant Documents and provide you with our comments. Given the position set forth above, none of the Port's consultants will have an obligation to produce documents to FMIC until we contact them with the reduced scope of documents to be produced.

Regards,
Jerry

13



**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| BOARD OF COMMISSIONERS OF THE PORT OF NEW ORLEANS | § § § | CIVIL ACTION NO. 06-8101 |
| Plaintiff, | § § | |
| v. | § § | JUDGE DONALD E. WALTER |
| LEXINGTON INSURANCE COMPANY, AND FACTORY MUTUAL INSURANCE COMPANY, | § § § § | MAGISTRATE ALMA L. CHASEZ |
| Defendants. | § § | |

**BUILDING CONSULTING ASSOCIATES, INC.; CHELSEA PLACE DESIGN, INC. D/B/A CHELSEA ARCHITECTS or CHELSEA DESIGN INVESTIGATIONS; CONSTRUCTION ANALYSIS, INC.; CRENSHAW CONSULTING GROUP, LP; ENGINEERING, DESIGN & TESTING CORP.; FISK ELECTRIC COMPANY; GILBANE CAT RESPONSE; HAGEN, STREIFF, NEWTON & OSHIRO; MCDONALD-MEHTA ENGINEERS, LLP; SOLIS PARKER & ASSOC.; SUNCORP VALUATIONS, INC.; UNITED SALVAGE; URBAN ENGINEERS, INC.; and ROBERT L. WRIGHT & ASSOCIATES, INC.'S OBJECTIONS TO SUBPOENAS DUCES TECUM**

To: Plaintiff, Board of Commissioners of the Port of New Orleans, by and through its attorney Susan Guidry, Of Counsel at William W. Hall & Associates at P.O. Box 60046, 1350 Port of New Orleans Place, New Orleans, Louisiana 70160.

Building Consulting Associates, Inc.; Chelsea Place Design, Inc. (d/b/a Chelsea Architects or Chelsea Design Investigations); Construction Analysis, Inc.; Crenshaw Consulting Group, LP; Engineering, Design & Testing Corp.; Fisk Electric Company; Gilbane CAT Response; Hagen, Streiff, Newton & Oshiro; McDonald-Mehta Engineers, LLP; Solis Parker & Assoc.; Suncorp Valuations, Inc.; United Salvage; Urban Engineers, Inc.; and Robert L. Wright & Associates, Inc. (hereinafter collectively referred to as "the Entities") serves their Objections in the above styled and numbered cause to Plaintiff, Board of Commissioners of the Port of New Orleans' (hereinafter the "Port") subpoenas served on the Entities on or about April 15, 2008, through April 25, 2008 pursuant to Federal Rule of Civil Procedure 45(c)(2)(b).

---

**Objection No. 1:**     The Entities object to the manner of service on the Entities because the subpoenas were improperly served by DHL courier service.  The Rules require service to be issued by a person at least 18 years old.  FED. R. CIV. P. 45(b)(1).  It is unknown whether the subpoenas were served by a person at least 18 years old and thus, they are deficient.

In the case of Building Consulting Associates, Inc. (hereinafter "BCA"), the subpoena was served on one Stanley J. Nieminski, an independent accountant who is not an agent, employee or representative of BCA.  Thus, BCA has not been served.

**Objection No. 2:**     Factory Mutual Insurance Company (hereinafter "FMIC") has already produced the Entities files regarding or in relation to the Port.  The documents have been produced electronically in native format and in scanned hard copy.  A person responding to a document request need not produce the same electronically stored information in more than one form.  FED. R. CIV. P. 45(d)(1)(C).  Here, FMIC has already produced the electronically stored data in two forms and the Entities object to being subpoenaed to produce the files for a third time.

**Objection No. 3:**     The subpoenas do not allow a reasonable time for compliance.  FED. R. CIV. P. 45(c)(3)(A)(I); *Kupritz v. Savannah College of Art & Design*, 155 F.R.D. 84, 88 (E.D. Pa. 1994).  These subpoenas require the gathering and labeling of thousands of documents and compliance by May 12, 2008 (or in some cases May 15, 2008 or May 19, 2008) is not feasible for the Entities which are actively conducting business and not a party to this lawsuit.

**Objection No. 4:**     The subpoenas subject the Entities to an undue burden.  FED. R. CIV. P. 45(c)(3)(A)(iv); *Linder v. Nat'l Sec. Agency*, 94 F.3d 693, 695 (D.C. Cir. 1996).  In the subpoenas the Port requests thousands of documents to be produced in native format and by scanned hard copy.  In addition, the Port requests that each of the thousands of documents be individually hand notated to include the physical location of the document (approximately 38

different fields according to the Port's subpoenas) on the producing parties' computer files.  To comply would cost the Entities undue time, expense, burden and hardship.  Furthermore, there is not any benefit to the Port in having each field inserted on the hard copies of the documents since the Port also has the documents in native format.

**Objection No. 5:**     The subpoenas require production of electronically stored information from sources that are not reasonably accessible because of undue burden and cost. FED. R. CIV. P. 45(d)(1)(D).  Specifically, the Entities' advertisements and brochures.

**Objection No. 6:**     The production of the  Entities' advertisements and  brochures are not relevant to the Port's causes of action against FMIC. *See* FED. R. EVID. 402; LA. CODE EVID. ANN. art. 402.

**Objection No. 7:**     The production of the Entities' advertisements and brochures requires the disclosure of the Entities' trade secrets and other confidential information regarding their very competitive businesses.  A subpoena may be modified or quashed to protect a person subject to or affected by the subpoena if the subpoena requires disclosure of a trade secret or other confidential information. FED. R. CIV. P. 45(c)(3)(B).

Respectfully submitted,

Charles B. Mitchell, Jr.
Texas Bar No.:  14207000
Federal I.D. No.:  16627
Brooke Ulrickson
Texas Bar No.: 24035988
BROWN, DEAN, WISEMAN, PROCTOR, HART &
HOWELL, L.L.P.
306 West 7th Street, Suite 200
Fort Worth, Texas 76102-4905
Telephone:     (817) 332-1391
Facsimile:     (817) 870-2427

and

Robert L. Redfearn, Jr.
Louisiana Bar No: 17106
SIMON, PERAGINE, SMITH & REDFEARN, LLP
1100 Poydras Street, 30th Floor
New Orleans, Louisiana 70163-3000
Telephone: (504) 569-2030
Facsimile: (504) 569-2999

### Certificate of Service

I certify that a copy of this Objection to Subpoenas Duces Tecum was served on the following counsel of record by on the 29th day of April, 2008:

Gerald O'Brien Gussoni, Jr.                    *Via Electronic mail & US Mail*
Jeffery M. Lynch
Francine Weaker
Joseph W. Fritz, Jr.
Board of Commissioners of the Port of New Orleans
1350 Port of New Orleans Place
P.O. Box 60046
New Orleans, LA 70160
**gussonib@portno.com**
**lynchj@portno.com**
**weakerf@portno.com**
**fritzj@portno.com**

William W. Hall                                *Via Electronic mail & US Mail*
William W. Hall & Associates
3500 N. Hullen Street
Metairie, LA 70002
**wmwhall@bellsouth.net**

Susan G. Guidry, Of Counsel                    *Via Electronic mail & CMRRR*
William W. Hall & Associates
963 Wilson Drive
New Orleans, LA 70019
**sgguidry@cox.net**

William F. Merlin, Jr.                                    *Via Electronic mail & US Mail*
Merlin Law Group, PA
777 S. Harbour Island Blvd.
Suite 950
Tampa, FL 33602
**wmerlin@merlinlawgroup.com**

Deborah R. Trotter                                       *Via Electronic mail & US Mail*
Merlin Law Group, PA
718 Dunbar Ave, Suite 1A
Bay St. Louis, MS 39520
**dtrotter@merlinlawgroup.com**

Jerry Gette                                              *Via Electronic mail & US Mail*
R. Tate Gorman
Shannon M. O'Malley
Zelle, Hofmann, Voelbel, Mason & Gette, L.L.P.
1201 Main Street, Suite 3000
Dallas, Texas 75202
**tgorman@zelle.com**
**jgette@zelle.com**
**somalley@zelle.com**

Charles B. Mitchell, Jr./ Brooke Ulrickson

14

WILLIAM W. HALL & ASSOCIATES

ATTORNEYS AT LAW

3500 N. HULLEN STREET

METAIRIE, LOUISIANA 70002

(504) 456-8692

TELECOPIER (504) 456-8624

May 1, 2008

<u>VIA EMAIL ONLY</u> (cmitchell@browndean.com)

Mr. Charles B. Mitchell, Jr.
BROWN, DEAN, WISEMAN,
PROCTOR, HART & HOWELL, L.L.P.
306 West 7th St., Ste. 200
Fort Worth, TX 76102

> Re:   *Board of Commissioners of the Port of New Orleans v. Lexington Insurance*
> *Company, and Factory Mutual Insurance Company*
> *USDC, ED La, C.A.  No. 06-8101*

Dear Mr. Mitchell:

The Objections to Subpoenas Duces Tecum on behalf of Building Consulting Associates, Inc.; Chelsea Place Design, Inc. D/B/A Chelsea Architects or Chelsea Design investigations; Construction Analysis, Inc.; Crenshaw Consulting Group, LP; Engineering, Design & Testing Corp.; Fisk Electric Company; Gilbane CAT Response; Hagen, Streiff, Newton, & Oshiro; McDonald-Mehta Engineers, LLP; Solis Parker & Assoc.; Suncorp Valuations, Inc.; United Salvage; Urban Engineers, Inc.; and Robert L. Wright & Associates, Inc. (hereinafter referred to as "Entity" individually or "Entities") was served on our client on April 29, 2008.  This letter is in response to those objections on behalf of the Board of Commissioners of the Port of New Orleans ("Port"), and addresses each objection in order.

**General Response 1**:  The objections are untimely as to Crenshaw Consulting Group, LP; Construction Analysis, Inc.; and Urban Engineers, Inc.  These three particular Entities were all served on April 14, 2008.  (Please see attached copies of affidavits of service.)  The Federal Rules of Civil Procedure require that objections to subpoenas duces tecum be served on the party or attorney designated in the subpoena before the earlier of fourteen days after the subpoena is served or the date specified for compliance.  See Fed. R. Civ. Pro. 45(c)(2)(B).  Thus, the objections are untimely and inapplicable to the subpoenas served on Crenshaw Consulting Group, LP; Construction Analysis, Inc.; and Urban Engineers, Inc.

**General Response 2**:  The objections are premature as to Hagen, Streiff, Newton, & Oshiro; and United Salvage Associates, Inc. because these particular Entities had not yet been served with the subpoenas at the time the objections were served.  Therefore, the objections are premature as to these particular Entities.

Mr. Charles B. Mitchell, Jr.
May 1, 2008
Page 2

**Response to Objection No. 1:**  With regard to the Entities that have been served with a subpoena, each was served by a professional process server who is over the age of eighteen. (Please see attached copies of affidavits or declarations of service.)  Thus, the service of the subpoena to each of these Entities was made in compliance with Fed. R. Civ. P. 45(b)(1).

In response to part two of Objection No. 1, I have attached a copy of the Illinois Secretary of State Corporations File Detail Report for Building Consulting Associates, Inc.  In this report, Stanley J. Nieminski, 6756 N. Harlem Ave., Chicago, IL 60631 is listed as the registered agent for Building Consulting Associates, Inc.  Thus, the Port has served the subpoena on an agent of this Entity, and has complied with Fed. R. Civ. P. 45(b).

The Port may later respond further to Objection No. 1.  The Port does not waive its additional responses to Objection No. 1, and reserves all rights to make those responses at a later date.

**Response to Objection No. 2:**  The Port is not clear as to what Factory Mutual Insurance Company ("FMIC") has and has not produced with regard to the Entities' data.  However, clearly the data produced by FMIC was not produced in response to the subpoenas, as the subpoenas had not been issued at the time FMIC made these productions.

The Port is not requesting that the Entities produce electronically stored information ("ESI") in more than one form.  FMIC and the Port have been in agreement for some time that each party would request of its consultants that the consultants produce in response to a subpoena a copy of electronic data in native format and that the parties would take it from there. FMIC and the Port have agreed that all electronic data will be produced in native and TIFF, but that the parties would prepare the TIFF images.  If FMIC did not inform the Entities of this and does not intend to do this, the Port will accept the native data from the consultants and create the TIFFs.  The data can be produced to the IKON office listed in the subpoena, and IKON will take it from there.

The Port may later respond further to Objection No. 2.  The Port does not waive its additional responses to Objection No. 2, and reserves all rights to make those responses at a later date.

**Response to Objection No. 3:**  The Port believes that the subpoenas served on these Entities allow a reasonable time for compliance in accordance with Fed. R. Civ. Pro. 45(c)(3)(A)(i).  The subpoenas to these Entities are limited in scope with regard to the documents requested, and subject to this limitation, the subpoenas supply a reasonable time for compliance with the requests for documents.  Nevertheless, the Port is amenable to an extension of the time for compliance.

The Port may later respond further to Objection No. 3.  The Port does not waive its additional responses to Objection No. 3, and reserves all rights to make those responses at a later date.

Mr. Charles B. Mitchell, Jr.
May 1, 2008
Page 3

**Response to Objection No. 4**: The Port does not agree that the subpoenas subject the Entities to an undue burden. See response to objection no. 2, above. The Port has not requested that any fielded information be "hand notated" for electronic documents. All metadata requested related to the electronically stored documents requested by the Port can be easily captured in a fully automated manner in a matter of minutes using any number of relatively inexpensive and commonly available tools. Like the electronic files, most of the fielded information requested for scanned paper documents can be derived from a fully automated process. The Port has requested that the Entities make accommodations during the scanning process for the entry of two basic bibliographic fields when they exist - "Box Number" and "Folder Tab Label". Nearly all modern scanning tools permit these fields to be entered only once by the scanning technician for multiple documents contained in the same box or folder. The Entities' hard documents can be brought to IKON for scanning in the manner requested.

The Port may later respond further to Objection No. 4. The Port does not waive its additional responses to Objection No. 4, and reserves all rights to make those responses at a later date.

**Response to Objection No. 5**: The Port responds to this objection by requesting clarification of Entities' objection as to why production of advertisements and brochures are not reasonably accessible. The Port asserts that Entities' advertisements and brochures are reasonably accessible by Entities, and production of those advertisements and brochures does not subject them to undue burden and cost. This information is voluntarily provided to the public and potential customers without undue burden and cost to the Entities.

If Entities include in this objection requests for production other than advertisements and brochures, the Port requests that Entities further clarify this objection.

The Port may later respond further to Objection No. 5. The Port does not waive its additional responses to Objection No. 5, and reserves all rights to make those responses at a later date.

**Response to Objection No. 6**: The Port responds that the Entities' advertisements and brochures are relevant to the Port's causes of action against FMIC.

The Port may later respond further to Objection No. 6. The Port does not waive its additional responses to Objection No. 6, and reserves all rights to make those responses at a later date.

**Response to Objection No. 7**: The Port responds that production of the Entities' advertisements and brochures does not require disclosure of the Entities' trade secrets and other confidential information. This information is voluntarily provided to the public and potential customers. Further, the production requested is limited in scope in that it only requests such advertisements and brochures that the Entities make available to the public and its current and potential customers. The Port further requests clarification as to why this requested

Mr. Charles B. Mitchell, Jr.
May 1, 2008
Page 4

documentation would require such disclosure as noted in the Objections to Subpoenas Duces Tecum.

The Port may later respond further to Objection No. 7. The Port does not waive its additional responses to Objection No. 7, and reserves all rights to make those responses at a later date.

During the course of my preparing this letter, I received numerous motions to quash filed on behalf of the Entities. It was my understanding when we spoke yesterday that we would attempt to amicably resolve the matter, or at least to limit the issues to the extent possible. If the Entities truly are concerned about the burden involved in responding to the subpoena, I would think that they also would be keenly interested in resolving the matter without undue litigation time and expense. To that end, I ask that you respond to the Port's requests for clarification and with any further questions or discussion that may assist in resolving the matter.

With kind regards, I remain

Sincerely,

Susan G. Guidry
Of Counsel

Enclosures

cc <u>Via Email Only</u>:

Gerald O. Gussoni, Jr.
William W. Hall
Deborah R. Trotter
Mary E. Kestenbaum
William F. Merlin, Jr.
Randy Santa Cruz
Shannon M. O'Malley
H. Jerome Gette
Thomas H. Cook, Jr.
James W. Holbrook, III
R. Tate Gorman

15

| | |
|---|---|
| **From:** | Susan Guidry |
| **To:** | Charles Mitchell, Jr. |
| **Date:** | 5/8/2008 3:41:07 PM |
| **Subject:** | Dismissal of remaining motions to quash |

Dear Charles:

Given the Court's ruling today and the Port's agreement to an extension of the return date on the subpoenas until a time to be set by the Court in the ruling on the motion for protective order in the Eastern District of Louisiana, please inform me at your earliest convenience whether you will agree to a consent motion and order of dismissal without prejudice of the remaining pending motions to quash.

I ask for your immediate attention to this matter due to the litigation costs accruing daily caused by the need to retain counsel in the various states.

With regards,


Susan G. Guidry
Of Counsel
William W. Hall & Associates
Post Office Box 60046
1350 Port of New Orleans Place
New Orleans, Louisiana  70160
(504) 528-3232
guidrys@portno.com

The information contained in this e-mail, including any attachments thereto, is confidential and may be legally privileged. It is intended solely for the addressee(s) named herein. If you are not the intended recipient, any disclosure, copying, distribution or any action taken or omitted to be taken in reliance on it, is prohibited and may be unlawful. If you have received this e-mail in error, please notify us immediately by replying to this message and then permanently deleting the original. Your receipt of this message is not intended to waive any applicable privileges.

| | |
|---|---|
| **CC:** | Bell, Michael H.;  jgette@zelle.com;  Joseph Guichet;  Merlin Law Group;  William W. Hall |

16